### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ADRIANA CAZARES, on behalf of herself and as administrator of the estate of Victor M. Cazares, Jr., AND MICHELLE CAZARES, | ) ) ) ) ) | Case No. 21-cv-1022 |
| | ) | Judge Robert M. Dow, Jr. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| FRANK R. RAND, JUSTIN ZHENG, GENE LAZCANO, and TOWN OF CICERO, ILLINOIS, a municipal corporation, | ) ) ) ) ) | |
| Defendants. | | |

### MEMORANDUM OPINION AND ORDER

Before this Court is a lawsuit brought under 42 U.S.C. § 1983 centered on a photograph of Victor M. Cazares, Jr. ("Mr. Cazares") taken after he was tragically shot in Cicero, Illinois, during the June 2020 civil unrest. On behalf of themselves and as administrator of Mr. Cazares's estate, Mr. Cazares' sisters, Adriana and Michelle Cazares, bring this action against a retired Cicero Fire Department Lieutenant and two EMT paramedics, alleging that the three men took a photo of Mr. Cazares as he died and posted it on Facebook. Plaintiffs seek damages from all three Defendants and indemnification from the Town of Cicero, alleging that dissemination of the photo violated their rights under federal and state law.

The Town of Cicero and EMT Paramedics, Justin Zheng and Gene Lazcano, have moved to dismiss the Complaint [1] against them in its entirety. For the reasons that follow, the Court grants motions [19, 22] because Plaintiffs have failed to allege the deprivation of a fundamental right and thus cannot maintain their § 1983 claims (Counts One and Two). Counts Three and Four also are subject to dismissal, as stipulated by the Plaintiffs. And Counts Five, Six, Seven, Eight

and Nine—all state law claims—are dismissed without prejudice as the Court declines to exercise supplemental jurisdiction given the dismissal of all federal claims.[1]  Accordingly, the Court dismisses the Complaint [1] in its entirety.  A final judgment will be entered consistent with Federal Rule of Civil Procedure 58 in favor of Defendants and against Plaintiffs on Counts One through Four.[2]  Plaintiffs are free to refile Counts Five through Nine in state court within one year pursuant to 735 ILCS 5/13-217.  Civil case terminated.

## I.    Background[3]

During the summer of 2020, millions of individuals gathered across the country to engage in protest activity, including in the town of Cicero, Illinois.  [1 (Compl.) at ¶¶ 1, 21].  Among other things, the protesters called for an end to racial injustice and excessive use of force by members of law enforcement.  [*Id.*].  On June 1, 2020, while protests were ongoing in Cicero, police reported that looting and vandalism had also broken out.  [*Id.* at ¶¶ 21–22].  Victor M. Cazares, Jr. ("Mr. Cazares") gathered with several neighbors in front of a local grocery to discourage looting.  [*Id.* at ¶¶ 4, 23–24].  At around 6 p.m., shots fired by an unknown person hit Mr. Cazares in the head. [*Id.* at ¶ 25].  The Town of Cicero dispatched two Cicero Fire Department EMT paramedics, Justin Zheng and Gene Lazcano, to administer emergency medical care.  [*Id.* at ¶¶ 16, 17, 26].  When Zheng and Lazcano reached Mr. Cazares at 6:23 pm, he was still breathing and had a pulse. Paramedics Zheng and Lazcano dispensed medical aid to him.  [*Id.* at ¶¶ 27–28].  Nevertheless, Mr. Cazares died later that evening.  [*Id.* at ¶¶ 29, 4].

---

[1] Diversity jurisdiction does not exist in this case because at least one Plaintiff and three Defendants are domiciled in Illinois.

[2] Although Defendant Rand has not yet filed a responsive pleading, the analysis as to Counts One through Four applies equally to all Defendants and thus dismissal and final judgment is appropriate at this time.

[3] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor.  *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Central to this Complaint, a photo of Mr. Cazares, wounded and on a stretcher, was disseminated on social media. According to the Complaint, while administering aid, "Zheng and Lazcano, took or caused another to take, one or more photograph[s] of Mr. Cazares without his consent." [1 (Compl.) at ¶ 30]. According to the Complaint, the photograph depicts "Mr. Cazares on the ambulance stretcher, his head having been bandaged and dying" with the stretcher "covered in blood and the bandage roll on Mr. Cazares' head * * * red and wet." [*Id.* at ¶ 31]. Another individual, Defendant Frank R. Rand, posted that photograph of Mr. Cazares to an 8,000-member Facebook group "for people who grew up in Cicero, Illinois" at 6:25 p.m., *i.e.*, within two minutes of the paramedics' arrival on the scene. [*Id.* at ¶ 32]. Accompanying the photo is the message, "[c]ome to Cicero to loot and break shit! Get a free body bag!! Nice head shot!!" [*Id.* at ¶ 34].

Also relevant here, the Complaint alleges that Rand has "significant contacts" with Zheng, Lazcano, and the Cicero Fire Department (CFD) and that all three men played a role in the disclosure of the photograph. [1 (Compl.) at ¶ 15]. Although Rand is a resident of Michigan, he is also a former lieutenant of the CFD, for which he worked for twenty-six years until his retirement in 2019. [*Id.*]. The Complaint further states that the Paramedics played a role in the disclosure of the photo:

> [b]ased on the fact that [the] photo shows Mr. Cazares on the ambulance stretcher with wounds bandaged, was posted within two minutes of the ambulance arrival, and was posted by a person with ties to the CFD, Plaintiffs are informed and believe that Defendants Zheng and Lazcano took the photograph and supplied it to Rand, or acted in conspiracy with another who did so.

[*Id.* at ¶ 35]. The Complaint also alleges that Mr. Cazares, his family, and "others associated with them" endured offensive comments and taunts following the Facebook post and "suffered grievous injuries" "as a result of Defendants' actions." [*Id.* at ¶¶ 36–37].

This lawsuit followed. Mr. Cazares' sister, Adriana Cazares, filed suit in federal court on behalf of herself and as Administrator of the Estate of Victor M. Cazares, Jr. Another sister,

Michelle Cazares, is a co-Plaintiff. Paramedics Zheng and Lazcano, Frank R. Rand, and the Town of Cicero ("Cicero") are the four Defendants. In the Complaint [1], Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 by depriving and conspiring to deprive Plaintiffs of their federal due process rights under the Fourteenth Amendment (Counts One and Two), together with a mixture of state law claims for invasion of privacy, defamation, breach of contract, intentional infliction of emotional distress, and state law conspiracy (Counts Three, Four, Five, Six, Seven). The Complaint also seeks indemnification from Cicero (Count Eight) and to hold Cicero liable under the principle of *respondeat superior* (Count Nine) as Zheng's and Lazcano's employer.

Three of the four defendants moved to dismiss the Complaint in its entirety. Defendant Town of Cicero ("Cicero") moved [19] to dismiss under Federal Rule of Civil Procedure 12(b)(6). Subsequently, Defendants Zheng and Lazcano (collectively "Paramedic Defendants") moved [22] pursuant to Rule 12(b)(6). Those motions are now before this Court.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

4

## III.    Analysis

Both Cicero and the Paramedic Defendants move to dismiss the Complaint [1] in its entirety.  In its motion [19], Cicero argues that (1) it is not liable to indemnify the Individual Defendants, (2) the Complaint does not state plausible claims for a violation of substantive due process, defamation, breach of contract, and *respondeat superior*, (3) the conspiracy counts should also therefore be dismissed, and (4) the Tort Immunity Act bars liability against the Town for violations of the remaining state law claims.  Similar to Cicero's second basis for dismissal, the Paramedic Defendants assert in their motion [22] that the Complaint fails to plausibly allege the deprivation of a fundamental right for substantive due process purposes or conspiratorial agreement among the Paramedic Defendants and Mr. Rand.  The Paramedic Defendants likewise seek the dismissal of the remainder of the Complaint, arguing that (1) state-law claims for invasion of privacy, defamation, and intentional infliction of emotional distress do not survive the death of Mr. Cazares, (2) the Complaint does not state a claim for breach of contract, and (3) the allegations do not state Michelle Cazares' damages.

### A.    Federal Law Claims

The Court begins and ends this order—and the entire case in federal court—with its assessment of Plaintiffs' federal law claims.  Counts One and Two of the Complaint allege that Defendants violated 42 U.S.C. § 1983 by depriving (Count One) and conspiring to deprive (Count Two) Plaintiffs' substantive due process rights under the Fourteenth Amendment.  Both Cicero and Paramedic Defendants assert that the Complaint fails to allege a violation of a fundamental right.  Plaintiffs respond that the Complaint adequately alleges that the Paramedic Defendants deprived and conspired with Rand to deprive Plaintiffs of the "qualified constitutional right to

5

medical privacy" under color of law. [27 (Pls.' Consolidated Resp. to Defs.' Mots. to Dismiss ("Pls.' Consolidated Resp.")) at 5].

Defendants have the better of the argument. The Due Process Clause of the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). However, "[g]iven its slippery nature, the requirements for stating a substantive due process claim are similarly vague. A plaintiff must allege that the government violated a fundamental right or liberty. And that violation must have been arbitrary and irrational. Substantive due process protects against only the most egregious and outrageous government action." *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019) (citations omitted); *Nelson v. City of Chicago*, 992 F.3d 599, 604 (7th Cir. 2021) ("To allege a viable substantive due process claim, [a plaintiff] would need to allege conduct under color of state law that 'violated a fundamental right or liberty' and was so 'arbitrary and irrational' as to 'shock the conscience'").

However, the Seventh Circuit has stressed that "the scope of substantive due process is very limited." *Campos*, 932 F.3d at 975 (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)). To be sure, in assessing purported violations of a fundamental right or liberty, the Supreme Court has held that "liberty" extends to certain rights beyond those "specific freedoms protected by the Bill of Rights." See *Washington v. Glucksberg*, 521 U.S. at 720 (enumerating, for example, the right to marital privacy and bodily integrity). Nevertheless, as the Seventh Circuit explained in *Nelson v. City of Chicago*, 992 F.3d 599 (7th Cir. 2021), "[s]ubstantive due process protects only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition,' and must be subject to 'careful description.'" *Id.* at 604 (internal quotation marks omitted) (quoting *Washington v. Glucksberg*, 521 U.S. at 720–21).

The purported liberty interest asserted by Plaintiffs is the disclosure of private medical information. Although the Supreme Court "has never held that the disclosure of private information denies due process," the Seventh Circuit has read the High Court's Fourteenth Amendment jurisprudence to "suggest that there might be a due process right to the nondisclosure of certain private information." See *Wolfe v. Schaefer*, 619 F.3d 782, 784–85 (7th Cir. 2010) (citing *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)). "The courts of appeals, including [the Seventh Circuit], have interpreted *Whalen* to recognize a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information— information that most people are reluctant to disclose to strangers." *Wolfe*, 619 F.3d at 785 (collecting cases); see also *Denius v. Dunlap*, 209 F.3d 944, 955–58 (7th Cir. 2000); *Anderson v. Romero*, 72 F.3d 518, 521–22 (7th Cir. 1995) ("A number of cases in the lower federal courts, including our own, building on *Whalen* and *Nixon*, recognize a qualified constitutional right to the confidentiality of medical records and medical communications."). Under this line of reasoning, for example, a court in this district recently denied a motion to dismiss a Fourteenth Amendment Due Process claim brought by a plaintiff who alleged that a police chief had violated his privacy under the Fourteenth Amendment by publicly disclosing his purported HIV status on Snapchat. See *Logan v. City of Evanston*, 2020 WL 6020487, at *4 (N.D. Ill. 2020).

To determine the outer contours of the right to confidentiality of private medical records, two additional principles guide this Court. First, the Supreme Court "ha[s] always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Washington v. Glucksberg*, 521 U.S. at 720 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). Extending liberty interests "to a great extent, place[s] the matter outside the arena of public debate and legislative

action," and thus the Supreme Court exercises "'the utmost care whenever [it] is asked to break new ground in this field' lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of [the] Court." *Id.* at 721 (citation omitted) (quoting *Moore v. East Cleveland*, 431 U.S. 494, 502 (1977)).

Second, this Court is mindful that the right to be free from the public disclosure of personal information may run up against other deeply rooted traditions enshrined in the Constitution. For that reason, the Seventh Circuit observed that while the circuit courts of appeals have recognized the right to keep certain information private, "[t]he Supreme Court * * * has seemed more interested in limiting the right of informational privacy than in its recognition and enforcement." *Wolfe*, 619 F.3d at 785. For example, the Supreme Court "has held that reputation is not part of the liberty that the due process clauses protect, even though concern with reputation is one of the principal reasons people don't want personal information about themselves broadcast to strangers," "that the First Amendment forbids a state to punish broadcasting the name of a murdered rape victim if her name is in judicial records open to public inspection," and that "the publicizing of highly personal information that is not in a record open to public inspection is privileged if there is a public interest in access to the information." See *id.* (citations omitted) (describing, *e.g.*, *Paul v. Davis*, 424 U.S. 693, 711–13 (1976); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494–96 (1975); *The Florida Star v. B.J.F.*, 491 U.S. 524, 532–34 (1989); *Bartnicki v. Vopper*, 532 U.S. 514, 534–35 (2001)). These cases, in particular, *Paul v. Davis*, "casts doubt on the propriety of basing a federal constitutional right to informational privacy on a state's decision to recognize such privacy as a species of liberty or property" and "illustrates the modern Supreme Court's expansive view of freedom of speech and of the press, a view that casts doubt on *any* effort to limit the public disclosure of personal information, however private." *Id.*

8

In this case, the Court agrees with Defendants that the Complaint does not allege a violation of Plaintiffs' fundamental rights or liberties because Defendants did not publicly disclose *private* medical information. The photo neither captured a private scene, nor medical information that was not already readily accessible to the naked eye. Rather, the photograph at the center of this litigation captured an image of a tragic scene that occurred in a public forum (on the street, in front of a grocery story), visible in plain sight, surrounded by other people (*e.g.*, at a *minimum* the community members with whom Mr. Cazares gathered), during a protest on a matter of wide public interest and of great public concern. Simply put, the Complaint does not allege that the photo uploaded by Mr. Rand revealed or exposed *private* medical information.

Because the Defendants did not reveal private medical information, Plaintiffs' reliance on *Logan v. City of Evanston*, 2020 WL 6020487 (N.D. Ill. 2020), is misplaced. To be sure, the photograph may have included Cazares' "medical condition, including his conscious state and severe head injuries" and its caption may have allowed "recipients of the post" to "infer that Mr. Cazares was fatally injured." [27 (Pls.' Consolidated Resp.) at 5] (citing [1 (Compl.) at ¶¶ 6, 31, 34]). But unlike the HIV status of the Plaintiff in *Logan*, Mr. Cazares' condition was visible to passersby and community members alike, so the photo posted by Mr. Rand did not divulge private information and Defendants did not "reveal[] Mr. Cazares' medical condition," as his condition was obvious to anyone on the scene. [27 at 5]. In contrast to the information disclosed in *Logan*, Cazares' allegations therefore do not "contain enough factual content to make out a claim for governmental violation of his medical privacy." See 2020 WL 6020487, at *4.

Plaintiffs' attempt to assert a liberty interest in the photograph also fails because it concerns a matter of substantial, legitimate public interest. While Mr. Cazares' death is undoubtedly tragic and deeply personal for his family members, consider the context. In Plaintiffs' own words, the

Complaint seeks to hold Defendants liable for publishing a photo taken during a protest centered on "calls for action to end racial injustice and excessive use of force by members of law enforcement" and to support the Black Lives Matter Movement. [1 (Compl.) at ¶ 1]. The protests themselves, as well as photos and commentary documenting events incident to the protests, are matters of public importance. Publication of a photo depicting any facet of the protests—even a photo that is disturbing—is a matter of "substantial public interest." Compare *Wolfe*, 619 F.3d at 786 (affirming dismissal of Fourteenth Amendment claim premised on the disclosure of matter of substantial public interest).

Furthermore, the photo captures an incident that occurred on a public street during a protest. In other words, the Complaint implicates free speech and expression under the First Amendment (an enumerated constitutional right), at a public event held in a public forum, where those rights are at their zenith. A Complaint that seeks to suppress photos documenting activity implicates the exact concerns raised by the Seventh Circuit in *Wolfe*, which warned about the tension between informational privacy and free speech. *Wolfe*, 619 F.3d at 785. Taking Plaintiffs' theory to its logical extreme, any image of a protestor, police officer, or passerby injured during a protest would convey "medical" information and would be subject to this "qualified medical information" right and thus prohibited from dissemination. Not only would recognizing a right to be free from disclosure of photos of violence and injury like Mr. Cazares's undermine the ability to document, disseminate, and engage in discourse about police treatment of protestors (and citizens' treatment of the police), but it would also have potentially suppressed the video from Minneapolis that sparked the 2020 protests in the first place. Such a result does not comport with the First Amendment.

In sum, the Court dismisses Count One because the Complaint does not allege that any Defendants deprived Plaintiffs of a fundamental liberty in violation of the Fourteenth Amendment. Count Two for conspiracy to deprive Plaintiffs' rights likewise must be dismissed, because there is no underlying constitutional deprivation from which to sustain the conspiracy claim. See *Campos*, 932 F.3d at 978 ("[G]iven [Plaintiff's] failure to state any underlying constitutional claims, he hasn't alleged any conspiracy between the * * * defendants"); *Dix v. Edelman Financial Services, LLC*, 978 F.3d 507, 518 (7th Cir. 2020) ("[A] plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim" (internal quotation marks and citation omitted)).

### B. Remaining State Law Claims

With the dismissal of all of Plaintiff's § 1983 claims, the only claims remaining in the case arise under state law. Plaintiffs concede that their state law claims for invasion of privacy (Count Three) and defamation (Count Four) should be dismissed because they do not survive Mr. Cazares' death. Plaintiffs' other claims include breach of contract (Count Five), intentional infliction of emotional distress (Count Six), civil conspiracy (Count Seven), indemnification (Count Eight), and *respondeat superior* (Count Nine). Where the state law claims are based on the supplemental jurisdiction of 28 U.S.C. § 1367 rather than the diversity jurisdiction of 28 U.S.C. § 1332, the "sensible presumption [is] that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Refined Metals Corp. v. NL Industries Inc.*, 937 F.3d 928, 935 (7th Cir. 2019) (quoting *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007)); see also *Black Bear Sports Group, Inc. v. Amateur Hockey Ass'n of Ill., Inc.*, 962 F.3d 968, 972 (7th Cir. 2020) (explaining that when "the federal claim fails, any state-law claims belong in state court" (citing 28 U.S.C. § 1367(c)(3))). Nonetheless, "'judicial economy,

11

convenience, fairness and comity may point to federal retention of state-law claims * * * when it is absolutely clear how the pendent claims can be decided.'" *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 461 (7th Cir. 2020) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

Here, having dismissed the federal law claims, the Court declines to exercise jurisdiction over the remaining state law claims. This is not a case where the balance of factors tip the scale towards a federal decision of the state-law claims. Illinois law gives Plaintiffs one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. See 735 ILCS § 5/13-217. This is also not a case where it is "absolutely clear how the pendent claims can be decided" to rebut that presumption. See *Donald*, 982 F.3d at 461. For example, the parties' briefing on whether the Plaintiffs' claims for intentional infliction of emotional distress survive the Illinois Survival Act, 755 ILCS § 5/27-6, whether the Tort Immunity Act, 745 ILCS § 10/6-106, apply to the paramedics' provision of care, and whether the paramedics were acting within the scope of their employment, raise issues of state law that an Illinois state court would be well suited to resolve. Moreover, Plaintiff's claims for indemnification and *respondeat superior* liability depend (at least in part) on how the underlying claims are resolved. Finally, this is a situation where "substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint." See *Brooks v. City of Chicago*, 2012 WL 13570, at *7 n.6 (N.D. Ill. Jan. 4, 2012). Accordingly, the Court will follow the general rule and dismiss the state law claims.

**IV.    Conclusion**

Plaintiffs have failed to allege the deprivation of a fundamental right. Thus, and for the reasons stated above, the Court grants the motions to dismiss [19, 22]. Plaintiffs' § 1983 claims

(Counts One and Two) are dismissed with prejudice, as are Counts Three and Four, as stipulated by the Plaintiffs. Counts Five, Six, Seven, Eight and Nine are dismissed without prejudice against all Defendants as the Court declines to exercise supplemental jurisdiction over them. A final judgment will be entered consistent with the foregoing rulings. Plaintiffs are free to refile Counts Five through Nine within one year in state court pursuant to 735 ILCS 5/13-217. Civil case terminated.


Dated: March 24, 2022

_____
Robert M. Dow, Jr.
United States District Judge